UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 0:13-141-EBA

BRENDA ANN DOUGLAS, PLAINTIFF,

V. **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN,
Commissioner of Social Security, DEFENDANT.

## I. INTRODUCTION

Plaintiff, Brenda Ann Douglas, brought this action under 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's decision to deny her application for disability insurance benefits and supplemental security income benefits. [R. 14-1 at 1]. Upon consent of the parties, this matter has been referred to the undersigned to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [R. 13]. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment [R. 14] shall be denied, Defendant's Motion for Summary Judgment [R. 15] shall be granted, and Judgment shall be entered affirming the final decision of the Commissioner.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff was born in 1966 [Tr. 160] and was forty-six years old on the date of the Administrative Law Judge's ("ALJ") decision [Tr. 30]. She completed two years of college and has employment experience as a teacher's aide [Tr. 32].

In her Disability Report, Form SSA-3368, Plaintiff claimed her work ability was limited due to "[h]earing problems, eyesight, feet problems, [and] Turner's Syndrome." [Tr. 184]. Thus, Plaintiff filed for disability insurance benefits and supplemental security income on December 20, 2010. [Tr. 181]. The Social Security Administration denied her claims initially [Tr. 95-99] and upon reconsideration [Tr. 100-05]. After denial of her claims, she requested a hearing in front of an ALJ. [Tr. 106-07]. Subsequently, Plaintiff appeared and testified at a hearing held on April 5, 2012 before ALJ Andrew J. Chwalibog. [Tr. 26]. At the hearing, she was represented by counsel, William Arnett. [Tr. 26]. During the hearing, the ALJ also heard testimony from Gina Baldwin, a vocational expert. [Tr. 27].

The ALJ ruled against Plaintiff in a written decision dated May 24, 2012. [Tr. 8]. In his decision, the ALJ found that Plaintiff suffered from the severe impairments of "moderate bilateral sensorineural hearing loss and decreased visual acuity (20 C.F.R. 404.1520(c) and 416.920(c))." [Tr. 13]. Despite these conditions, the ALJ determined that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526. 416.920(d), 416.925 and 416.926)." [Tr. 15]. Continuing with his evaluation, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work, and he set forth her specific limitations in his opinion. [Tr. 15]. Further, the ALJ noted that Plaintiff was unable to perform past relevant work. [Tr. 18]. However, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." [Tr. 19]. Based on these findings, the ALJ concluded that Plaintiff was not under a "disability" as defined by the Social Security Act. [Tr. 19]. Following the adverse decision of the

ALJ, Plaintiff properly exhausted her administrative remedies by appealing to the Social Security Appeals Council, which denied her request for review. [Tr. 1].

On September 14, 2013, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision. [R. 1]. In her Motion for Summary Judgment [R. 14], Plaintiff sets forth multiple arguments for reversal of the ALJ's opinion. Defendant responds that the ALJ's opinion should be affirmed, as it is supported by substantial evidence. [R. 15]. The case is now ripe for review.

### III . STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal citations and quotation marks omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal citations and quotation marks omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence" would be appropriate in situations

3

where the ALJ ignores uncontested, compelling evidence for one side, makes no express findings on witness credibility and makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

The Commissioner's regulations provide a sequential, five-step process for the evaluation of disabilities. See 20 C.F.R. § 404.1520(a). First, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity; if so, she is not disabled. Id. § 404.1520(a)(4)(i). Second, if claimant is not engaged in substantial gainful activity, the Commissioner must determine whether she has a severe impairment; if not, she is not disabled. Id. § 404.1520(a)(4)(ii). Third, if claimant has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1; if the severe impairment meets or equals a listed impairment, claimant is presumed disabled. Id. § 404.1520(a)(4)(iii). Fourth, if claimant's impairment does not meet or equal a listed impairment, the Commissioner must determine whether claimant's impairment prevents her from doing past relevant work; if not, she is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, if claimant's impairment prevents her from doing past relevant work, the Commissioner must determine whether other work exists in the national economy that accommodates her RFC and vocational factors (age, education, skills, etc.); if so, she is not disabled. Id. § 404.1520(a)(4)(v).

At step one of this process, there is no dispute between the parties that Plaintiff has not

participated in "substantial gainful activity" since December 10, 2010, her stated disability onset date. However, Plaintiff alleges three different errors by the ALJ, each of which pertain to different steps in the Commissioner's inquiry. Specifically, Plaintiff asserts that:

1. The ALJ erred by finding that Plaintiff's feet, neck, back, and mental impairments are not severe.

2. The ALJ erred by failing to properly consider all of Plaintiff's impairments in determining Plaintiff's RFC.

3. The ALJ erred by relying on improper hypothetical questions to the vocational expert.

[R. 14-1 at 1]. Each issue raised by Plaintiff will be considered, in turn, below.

A. Severity of Impairments

In step two of the five-step evaluation process, the ALJ determined that Plaintiff suffered from two severe impairments: "moderate bilateral sensorineural hearing loss and decreased visual acuity." [Tr. 13]. Now, Plaintiff asserts that the ALJ erred by not also finding that Plaintiff had severe impairments related to anorexia, foot, neck, back, and mental problems. [R. 14-1 at 7-8].

Under the regulations, upon determining that a claimant has one severe impairment at step two, the ALJ must continue with the remaining steps in his disability evaluation as outlined above. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Further, once any single impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps. McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008). In the present case, the ALJ found that Plaintiff did, in fact, suffer from two severe impairments. [Tr. 13]. The ALJ also proceeded, as required, to complete steps three through five of the analysis. Since the ALJ

could properly consider Plaintiff's non-severe impairments in the remaining steps of his analysis, "it then became 'legally irrelevant' that her other impairments were determined to be not severe." McGlothin, 299 F. App'x at 522 (citations omitted); see also Maziarz, 837 F.2d at 244. Thus, regardless of whether Plaintiff's non-severe impairments could have, in fact, been classified as severe, the ALJ did not err by not designating them as severe.

### B. Consideration of Plaintiff's Impairments

Plaintiff next argues that the ALJ erred by failing to factor all of her alleged impairments into his determination of her RFC used in steps four and five of the sequential evaluation process. Specifically, Plaintiff contends that the ALJ failed to consider the effect her alleged anorexia would have on her RFC. Additionally, Plaintiff asserts that the ALJ erred by failing to consider work limitations related to her foot, neck, back, and mental problems in combination rather than individually.

*1. Anorexia*

Following his consultative exam of Plaintiff, Dr. Haziq, in one isolated reference, noted a history of "anorexia and significant weight loss." [Tr. 302]. Despite Haziq's notation, the ALJ did not expressly consider Plaintiff's alleged anorexia in his opinion. Now, Plaintiff asserts that the ALJ erred by failing to factor her alleged anorexia into his assessment of her RFC. However, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004) (internal quotation marks omitted) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). The more fundamental inquiry, rather than whether the ALJ expressly addressed every single piece of evidence in the record, is

6

whether, considering the record as a whole, the ALJ's decision was based on substantial evidence. Id. (citing Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001)).

Although the ALJ did not specifically reference Haziq's notation regarding anorexia, it is clear from the record that the ALJ considered the substance of Haziq's report. In fact, the ALJ cites Haziq's report in reference to Plaintiff's alleged hearing and vision disabilities. [Tr. at 17]. As for Plaintiff's alleged anorexia, the record provides no evidence that Plaintiff emphasized anorexia during her current application and hearing process or that Plaintiff actually suffers any work-related limitations owing to anorexia. Further, Haziq was not a treating physician–he performed only one examination of Plaintiff–and his opinion is not entitled to any special deference. Moreover, Haziq's finding of anorexia is not particularly credible since it appears to be based entirely on Plaintiff's subjective complaints. See Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993) (explaining that medical opinions, even those of treating doctors, are not entitled to controlling weight when they are based on subjective complaints rather than objective, clinical evidence); Miller v. Comm'r of Soc. Sec., No. 12-12639, 2013 WL 4482969, at *10 (E.D. Mich. Aug. 20, 2013). Even more, neither Haziq nor any other physician of record concluded that Plaintiff had work-related limitations on account of anorexia. Because Haziq's isolated reference to Plaintiff's anorexia did not provide the ALJ with sufficient grounds to find additional work-related limitations, the ALJ's omission of any reference to anorexia in his determination of Plaintiff's RFC was not error.

*2. Combination of Impairments*

The regulations expressly require the ALJ to consider the combined effects of any impairments suffered by a claimant. 20 C.F.R. § 404.1523. As discussed above, the ALJ did not consider Plaintiff's alleged anorexia in his RFC determination because there is no evidence that

Plaintiff suffered work-related limitations on account of anorexia. However, the ALJ fulfilled the requirements of the regulations by expressly considering all the other impairments cited in Plaintiff's brief.

First, the ALJ thoroughly considered Plaintiff's hearing and vision problems. The ALJ found Plaintiff's complaints of hearing problems to be partially credible. [Tr. at 16]. However, the ALJ also noted that Dr. Touma found only moderate hearing loss and opined that Plaintiff would be an excellent candidate for hearing aids. [Tr. at 16]. Further, although the ALJ found visual impairment, the ALJ noted that Dr. Reed found no exertional limitations due to Plaintiff's vision problems. [Tr. at 17].

Next, in considering Plaintiff's alleged foot impairment, the ALJ cited Haziq's examination, which noted Plaintiff's varus deformity and tenderness in her left foot and ankle. [Tr. 13]. However, the ALJ also noted that the evidence did not demonstrate that Plaintiff complained of or received treatment for foot problems. [Tr. 13]. Further, the ALJ found Plaintiff's allegations of foot problems were not credible because the evidence indicated that she walked daily and spent about an hour at a time shopping twice a week. [Tr. 13].

Regarding the Plaintiff's alleged back and neck pain, the ALJ noted that Plaintiff's x-rays demonstrated nothing more than mild disc disease in her spine. [Tr. 13]. Further, the ALJ considered Haziq's examination, which revealed no pain or limitations in the lumbar spine and no neurological defects. [Tr. 13].

In regard to Plaintiff's alleged mental impairments, the record reveals that the ALJ conducted an extensive analysis. The ALJ noted that Plaintiff was diagnosed with depression and anxiety. [tr. 14]. However, the ALJ also considered Plaintiff's testimony that she did not receive a mental health

treatment referral from her physicians. [Tr. 14]. Further, the ALJ observed that Plaintiff's treatment records indicated that her psychotropic medication was working well. [Tr. 14]. Additionally, the ALJ noted that Dr. Stodgill's consultative examination of Plaintiff produced a Global Assessment of Functioning score of sixty to sixty-five, which is indicative of no more than mild mental limitations. [Tr. 14]. Even more, the ALJ expressly considered the opinion of Mr. Pack, a one-time examiner who opined that Plaintiff would experience a poor ability to relate to coworkers and deal with the public. [Tr. 18]. In fact, the ALJ assigned little weight to Pack's opinion because it was contradicted by his own evaluation notes, which indicated that Plaintiff frequently goes out in public and that her GAF score was indicative of only mild mental limitations. [Tr. 18].

As his decision demonstrates, the ALJ, in determining Plaintiff's RFC, considered Plaintiff's severe physical impairments, her subjective complaints, and her additional non-severe impairments. The Sixth Circuit Court of Appeals has held that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination." Loy v. Sec'y of Health & Hum. Servs., 901 F.2d 1306, 1310 (6th Cir. 1990); see also Despins v. Comm'r of Soc. Sec., 257 F. App'x 923, 931 (6th Cir. 2007). Moreover, the ALJ specifically stated that he considered all of Plaintiff's symptoms to the extent that they were consistent with the other evidence of record. [Tr. 16]. In sum, the ALJ complied with the regulations by considering the combined effects of all of Plaintiff's legitimate limitations, and Plaintiff's argument to the contrary is without merit.

### D. Vocational Expert

As a final argument, Plaintiff contends that the ALJ erred by relying on improper hypothetical questions to the vocational expert that did not fully account for Plaintiff's alleged inability to

9

communicate with co-workers and the public due to vision and hearing problems. [R. 14-1 at 12-13]. More specifically, Plaintiff claims that the ALJ's questions included restrictions on the Plaintiff's ability to communicate with the public but failed to account for her inability to relate to coworkers. [R. 14-1 at 12]. Plaintiff's claim that the ALJ did not account for these impairments in his hypothetical questions is not supported by the record.

At the April 5, 2012 administrative hearing, after the ALJ had described Plaintiff's physical limitations, the vocational expert found that "[t]here would be a reduced range of light and sedentary jobs the claimant could perform." [Tr. at 42]. Further, the ALJ mentioned specific examples of jobs Plaintiff could perform such as house sitter, non-clerical office helper, and final assembler. [Tr. at 42]. At that point, the ALJ asked the vocational expert whether an individual could still perform a reduced range of light and sedentary work if she was "seriously limited . . . which would mean that [she] would have occasional *problems relating to coworkers*, dealing with the public, and relating predictably in social situations . . . ." [Tr. at 42-43] (emphasis added). The vocational expert found that the Plaintiff could still perform the jobs. [Tr. at 43].

Thus, contrary to Plaintiff's argument, the ALJ's hypothetical questions did, in fact, sufficiently account for Plaintiff's potential difficulties communicating with coworkers. Further, the phrasing of the ALJ's hypothetical question based on "occasional" problems relating to coworkers and the public is supported by substantial evidence. As previously noted, the record supports the ALJ's determination regarding the extent of Plaintiff's vision and hearing problems. An ALJ is entitled to rely on a vocational expert's testimony when the ALJ's questions properly include a claimant's alleged conditions that are consistent with the record as a whole. Foster v. Halter, 279 F.3d 348, 356 (6th Cir. 2001). Thus, the ALJ did not err by relying on the vocational expert's

answer finding that Plaintiff could perform a reduced range of light and sedentary work.[1]

### V. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Motion for Summary Judgment [R. 14] be DENIED, Defendant Commissioner's Motion for Summary Judgment [R. 15] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Signed January 29, 2015.



Signed By:
*Edward B. Atkins*
**United States Magistrate Judge**

---

[1] In addition to asking the vocational expert a hypothetical about Plaintiff's "occasional" problems relating to coworkers because of hearing and vision problems, the ALJ asked a second hypothetical to determine whether Plaintiff could still work if she had "frequent," rather than "occasional," problems communicating with coworkers. [Tr. at 43]. The vocational expert found that "frequent" issues would preclude full-time work. [Tr. at 43]. Although the issue is not thoroughly briefed, as part of her conclusion, Plaintiff seems to assert that the ALJ erred by not relying on the vocational expert's answer to the second question positing more severe, "frequent" problems.

However, as noted above, the record supports the ALJ's determination as to the severity of Plaintiff's vision and hearing problems. Further, an ALJ is not required to rely on the testimony of a vocational expert that is based on additional limitations that the ALJ later determines are not consistent with the record. See Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993). Thus, the ALJ did not err by relying on the vocational expert's answer to the first question, which stated limitations that were more in line with the ALJ's ultimate determination as to the severity of Plaintiff's vision and hearing problems.